## LOVING et al v. BRIDEWELL.

[88 South. 505, No. 21795.]

MORTGAGES. *Contract to sell real estate construed not to be an equitable mortgage.*

Where parties were in litigation over property, and it is agreed that in consideration of an agreement to sell with warranty, at a given price to be paid on a given day, the seller can take judgment in the pending suits adjudging title in himself with stay of execution until the day named for the consummation of the contract, and said agreement provides that, if not performed by said date, the contract would be void, and where by subsequent agreement the time was extended in which to meet said agreement on condition that certain property be put up as a forfeit in case the agreement was not performed, said forfeited property to be held as liquidated damages in case of failure to carry out the agreement, such contract is an agreement to convey, and not an equitable mortgage.

APPEAL from chancery court of Copiah county.
HON. V. J. STRICKER, Chancellor.

Suit by Nat Bridewell against John M. Loving and another. Decree for the complainant, and defendants appeal. Reversed and remanded.

*Rawls & Hathorn* and *M. S. McNeil,* for appellants.

The first question to be determined by this court is whether or not the lower court erred in holding that the agreement between appellee, Nat Bridewell, dated March 24, 1919, was an equitable mortgage, with the right in Nat Bridewell to redeem at any time before appropriate action was had by appellants to foreclose.

If the court did not err in this holding, then we are frank to say that in our judgment the case should not be reversed, but should be affirmed in the main, limiting the time to redeem to such time as to the court would seem right and giving appellants the right to judgment over against appellee in the event the foreclosure sale did not bring enough to pay appellants' mortgage debt. But if the court erred in holding this agreement to be an equitable mortgage, then the case must be reversed, and we contend and hope to show that not only should the case be reversed, but that appellee's bill should be dismissed and judgment here for appellants. Is this agreement an equitable mortgage?

In the case of *Bailey* v. *St. Louis Union Trust Co.,* 87 S. W. 1003, the Missouri court held: "In order to avoid foreclosure of a deed of trust, the mortgagor quitclaimed the property to the mortgagee, who executed an agreement to reconvey the property on condition of the payment by the mortgagor of the debt, taxes and other incumbrances before a certain date. If these obligations were not so paid, the agreement was to be void. Held, that the conveyance vested an absolute title in the mortgagee, and the transaction did not constitute an "equitable mortgage." The case at bar is a much stronger case than the above for Seal already had title by foreclosure proceedings and appellee did not owe him a dollar, but was merely disputing his title.

The courts are uniform in holding that in order for a deed, absolute on its face or any other instrument or contract for the sale or conveyance of land, to be construed to be an equitable mortgage, there must of necessity exist a debt between the parties to be secured by the deed or contract. *Beidleman* v. *Koch et al.,* 85 N. E. 977 (Ind.).

The supreme court of Missouri say, in the case of *Turner* v. *Kerr,* 44 Mo., 429: "It is not true, as a result of the adjudged cases, that a deed absolute in its terms, executed in payment of a debt, is converted into a mortgage merely because the grantee therein (the creditor) gives a con-

temporaneous stipulation binding him to recovery, on being reimbursed within an agreed period, an amount equal to his debt and interest thereon. If they intended an extinguishment of the debt, and the vesting of an absolute title, subject only to an agreement to reconvey on specific terms as the payment of a sum equal to the canceled debt and interest, the object of the arrangement is not to be defeated by turning the transaction into a mortgage when the parties intended no such result . . . That the amount of money to be paid as a condition to the right to demand a reconveyance is measured by the amount of the debt and interest is a circumstance of no controlling importance." *Vincent* v. *Walker, et al.,* 5 So. (Ala.) 466; *Haynis* v. *Robertson,* 58 Ala. 37; *Logwood* v. *Hussey,* 60 Ala. 417; *West* v. *Hendrix,* 28 Ala. 226.

Inadequacy of price or consideration is not sufficient of itself to convert an instrument, porporting to be a conditional sale, into a mortgage, or security for the repayment of money, although it may be an element of fact to be considered in determining the question, where there is a debt in existence to be secured. *West* v. *Hendrix,* 28 Ala. 226; *Rapier* v. *Paper Co.,* 77 Ala. 126.

An instrument cannot operate, at one and the same time, as a mortgage and a conditional sale; these two classes of conveyance being chiefly distinguished by the existence of a debt in the former and the non-existence in the latter. *Nelson* v. *Wadsworth,* 55 So. 121; *Vincent* v. *Walker,* 86 Ala. 336, 5 So. 465; *Douglass* v. *Moody,* 80 Ala. 61.

And to convert an instrument, on its face a conditional sale, into a mortgage, the intention and understanding of both parties to such instrument must be shown to have concurred that it should so operate. *West* v. *Hendrix,* 28 Ala. 226; *Douglass* v. *Moody, supra; Bell* v. *Shiver et al.,* 61 So. 881; *Vincent* v. *Walker,* 86 Ala. 336, 5 So. 465; *Douglass* v. *Moody,* 80 Ala. 61; *Nelson* v. *Wadsworth,* 171 Ala. 603, 55 So. 120.

The same rule is laid down by our own courts, as a test to determine the fact of whether or not a written instru-

ment is an equitable mortgage or a contract of sale, or a right to repurchase at a given price. *Hopes* v. *Bailey,* 28 Miss. 339; *Slee* v. *Manhatten Co.,* 1 Paige, Ch. R. (N. Y.) 56; *Conway* v. *Alexander,* 7 Cranch (U. S.), 237, 3 L. Ed. 321.

In conditional sales, the rule is, that the vendor must comply with the condition upon which his right to a reconveyance depends, strictly and precisely, or his right to reclaim the property will be lost. 4 Kent's Comm. 144. If a day be fixed for the performance of the condition, it must be precisely observed; and if no time be fixed, the terms must be complied with in a reasonable time. This serves to show that the appellant can claim nothing except what is within the strict terms or purview of the agreement; and regarding his right merely as one of redemption, we think it manifest that in no point of view could he claim more than that. *Magee* v. *Catching,* 33 Miss. 693; *Klein* v. *McNamara,* 54 Miss. 100.

Another test laid down by the courts, and a very proper one is: "If the exercise of the right to repurchase (purchase) is optional with the grantor (appellee) and cannot be compelled by the grantee (appellant Geo. W. Seal) there is no mortgage." See 60 Ala. 417, 8 Tex. 389, 18 Wend. 518, and especially see *Conways, Executors, etc.,* v. *Alexander,* reported in 7 Cranch. 218.

Applying these tests can it be said that this agreement is an equitable mortgage and not an agreement on the part of Seal, the owner of the land to sell and convey to Nat. Bridewell upon the payment of the agreed purchase price.

*P. Z. Jones,* for appellee.

Under the pleadings and on the evidence the chancellor held and decided that the agreement between the parties, and its proper interpretation and construction in the light of everything that preceded was in effect an equitable mortgage and that Nat Bridewell as the equitable mort-

gagor was entitled to redeem. Learned counsel for appellants endeavor to demonstrate that in this the chancellor was grievously in error, as they contend the agreement was an option and not an equitable mortgage.

The parties were dealing about an antecedent indebtedness and the time of its payment was extended until the first day of December, 1919. Under these circumstances we submit that the chancellor was right in holding that the contract constituted an equitable mortgage. *Klein* v. *McNamara,* 54 Miss. 90; *Strickland* v. *Kirk,* 51 Miss. 795.

Then taking the definitions given of an option by the learned counsel in their brief for appellants, we submit that the instrument in this case is not an option. An option seems to be an offer to sell, which for a certain consideration the owner of the land agrees to continue and hold open for a certain definite time, the consideration being paid for the option, usually a nominal sum. *Moak* v. *Bryant,* 51 Miss. 560.

But to our mind it is immaterial whether the agreement constitutes an equitable mortgage, as held by the court, or whether it is merely an option, as claimed by learned counsel for appellants.

Whatever it may be called, and it like the rose will smell as sweet by one name as another, Nat Bridewell had the right to become the owner of the land by paying eight hundred on or before the first day of December, 1919, and within such further or other time as the appellants may have agreed that it might be paid. Conceding that in the first instance time was of the essence of this agreement, the extension waived this part of the contract. *Garrison* v. *Newton,* 96 Wash. 384, 4 A. L. R. 804; *Carroll* v. *Munday,* 4 A. L. R. (Iowa) 811.

After a waiver, extension, or delay of the time set for the performance of a contract for the sale of land, a party is entitled to a reasonable time within which to perform his part of the agreement. Note to above cases 4 A. L. R. at page 815. Under this heading the authorities are collected and discussed.

Where the time for the completion of a contract for the sale or exchange of land was originally essential, but a forfeiture has been waived, or where time was no originally essential, but there has been an unreasonable delay in the performance, a notice allowing a reasonable time in which to perform is necessary before the other party can be placed in default. Note 4 A. L. R., at page 822, where the authorities under this heading are collected and treated analytically.

In this same note there is a collection of the cases at pages 826 to 827 under the heading: "What constitutes a reasonable time, wherein it appears that anywhere from two days to two years according to the circumstances had been held to be reasonable.

This is not generally deemed in equity to be of the essence of a contract, unless the parties have expressly so treated it, or it necessarily follows from the facts and circumstances of the agreement. The condition in a title bond "that if the vendee complies promptly with his contract, that the vendor will execute a deed," does not make time of the essence of the agreement; and a failure by the vendee to comply by the payment of the purchase money when it falls due, will not therefore, authorize the vendor to rescind, without an offer to perform on his part. *Jones v. Loggins,* 37 Miss. 546; *Johnson v. Jackson,* 27 Miss. 498.

After indulgence granted for an indefinite time, the vendee can only be placed in default by a demand made on the part of the vendor, and a tender of payment even then is sufficient offer to perform by the vendee. *Stewart v. Yates,* 30 Miss. 100; *Eckfort v. Halbut,* 30 Miss. 273.

As to the appellant, Loving, he cannot claim any higher right than Seal and the Bridewells, as he was a purchaser with full notice of Nat Bridewell's equity. Nat Bridewell was in the possession of the premises in dispute at the date of Loving's purchase, and that possession was notice to the world of the title or equity of the occupant, whether recorded or not. *Jones v. Loggins,* 37 Miss. 554.

Besides, Loving had actual knowledge of Nat Bridewell's claim and title as per the undisputed testimony of both Nat Bridewell and his wife, Mrs. Bettie Bridewell, both of whom testified that application was made to him to borrow the money with which to pay this Seal debt and claim, and which testimony Loving did not deny nor dispute, he not even going on the witness stand.

Although time be of the essence of a contract, the penalty attending a failure to perform the same within the time specified, will not be enforced in equity if the circumstances render its enforcement equitable. A right to the forfeiture of such contract will be waived unless promptly claimed by the party at the time of its accrual. *Burroughs* v. *Jones,* 79 Miss. 214; *Gannaway* v. *Toler,* 84 So. (Miss.) 129; *Philip Gruner Lbr. Co.* v. *Algonquin Lbr. Co.,* 85 (Miss.) 191; see 84 So., at pages 131-132.

Should this court desire to consider some of the cases deciding what is an option and what is not an option, and what is a contract to sell and convey and what is not, and differentiating between an option and a contract to convey, a glance at the authorities cited and analyzed in the note to American Law Reports, Column 3, beginning at page 576, might gratify this desire, but as we view the case, it is immaterial which it may be. The indefinite extension of the contract and of the time for its performance, based on a valid and substantial consideration and payment of a fifty dollar Liberty Bond, converted the original cantract, whether an option or a contract of purchase, into one of purchase, as we see the case, and we respectfully submit that this decree of the lower court ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

L. O. Bridewell owned a homestead of sixty seven acres upon which he lived with his wife, and he and his wife executed a deed of trust on said lands to Mrs. C. G. Bridewell. Subsequent to the execution of the deed of trust Bridewell died and left a will in which he devised the said property

to Nat Bridewell. Subsequently Mrs. Bridewell assigned the deed of trust to one G. W. Seal, and, default having been made in the payment, Seal had the land sold under the deed of trust and at the said sale purchased the property. Thereafter, a bill was filed in the chancery court by Nat Bridewell against Mrs. C. G. Bridewell, Lee Bridewell, and G. W. Seal to cancel the said deed of trust and trustee's deed. Seal filed an ejectment suit in the circuit court to obtain possession of the said land. While these two suits were pending an agreement was entered into in the following words:

"This agreement by and between Nat Bridewell and Mrs. C. G. Bridewell, Lee O. Bridewell, and Geo. W. Seal, represented C. V. Hathorn, attorney of record and in fact for the said Mrs. C. G. Bridewell, Lee O. Bridewell, and Geo. W. Seal, witness that in consideration that the said Nat. Bridewell has agreed that the said Mrs. C. G. Bridewell, Lee Bridewell, and Geo. W. Seal may take a decree denying to the said Nat Bridewell relief in the case now pending in the chancery court of Copiah county, Miss., and styled *Nat Bridewell* v. *Mrs. C. G. Bridewell et al.,* and has also agreed that at the next term of the circuit court of said county a judgment may be taken by the said Geo. W. Seal, plaintiff, in that certain cause therein pending, styled *Geo. W. Seal* v. *Nat Bridewell,* said judgment in ejectment to be stayed and not executed until on and after December 1, 1919, the said George W. Seal hereby agrees with the said Nat Bridewell by and through his said attorney, C. V. Hathorn, that if the said Nat Bridewell shall pay to the said attorney for the said Geo. W. Seal on or before the 1st day of December, A. D. 1919, the sum of eight hundred dollars ($800), the said Geo. W. Seal will upon the payment of said sum to his said attorney execute and deliver to the said Nat Bridewell a good and sufficient warranty deed to that certain land and property described in said suits as Southeast quarter sec. 21, less ten acres on north side, and seven acres in Southwest corner of Southwest quarter of Southwest quarter of section 22 and Northwest quarter of Northwest quarter, less

ten acres on east side of section 27, all in thownship 9, range 8 east, in said county of Copiah, or, if desired by the said Nat Bridewell, it is agreed that said deed will be executed by the said Geo. W. Seal and placed in escrow with the Merchants' & Planters' Bank of Hazlehurst, Miss., to be by them held and delivered upon payment of said sum to the account of the said Geo. W. Seal or his attorneys. If the said Nat Bridewell should fail to raise said sum and pay the same on or before December 1, 1919, then this agreement to convey said property by Geo. W. Seal to be void, but, if said sum is raised and paid as aforesaid, then to be binding and of full force and effect."

Under this agreement a final decree was taken in the chancery court dismissing the bill, and a final judgment was taken in the circuit court in favor of the plaintiff, Seal, with a stay of execution until December 1, 1919. In the fall of 1919, prior to the date fixed for the payment of money under the above agreement, the attorneys for Mrs. C. G. Bridewell, Lee O. Bridewell, and G. W. Seal addressed a letter to Nat Bridewell calling his attention to the maturity of the option or contract entered into as above stated, and requested information as to whether Nat Bridewell expected to avail of the option granted, and, if not, they desired to dispose of the property to other persons who desired to buy. Nat Bridewell replied, informing the said attorneys that he expected to make the payment, and that he had applied to the Farm Loan Bank at New Orleans for a loan on said property, and that he expected to secure the loan, but he did not know whether it could be secured by the 1st of December, and he desired an extension of the option in order to secure said loan. On the 29th day of November, 1919, a letter was written by the said attorneys in answer which read as follows:

"Mr. Nat Bridewell, Beauregard, Mississippi—Dear sir: Your letter of the 24th inst., directed to your brother Lee O. Bridewell, with reference to your purchase of the land near Beauregard has been turned over to me for attention, as we are handling this matter for him and Mr. Seal.

"We have written to Mr. Mayes, and he tells us that he is of opinion that your loan will finally go through, but does not know just how long it will take.

"Now you understand, Mr. Bridewell, that this matter has been very long drawn out, and we have attempted to give you all the time necessary to perfect your loan with the government. However, we are still willing to hold the matter in abeyance with you until you get a definite answer from the Federal Loan Bank, and of course, if that answer is favorable and they let you have money enough to pay the purchase price, we are still willing to wait a reasonable time, providing you will put up for forfeiture your fifty dollar Liberty Bond; this bond to be put up with the understanding that if the government makes you a loan on the property, according to your present application, sufficient to pay the eight hundred dollars or if it does not loan you enough to pay the entire eight hundred dollars, if you raise the balance otherwise and pay it at the same time that the government makes you the loan, then the fifty dollars is to be returned to you, but if the government refuses your loan or if it makes an insufficient loan and you fail to get up the balance of the money within, say, ten days or two weeks after the government's action has been taken and the government's money is available, this fifty dollar Liberty Bond is to be forfeited and go to Mr. Seal, the present owner of the land as liquidated damages.

"If you want to proceed with this understanding, then forward us at once this fifty dollar Liberty Bond, and this letter will evidence our agreement with you, and we will at once notify the bank at Hazlehurst to hold the deed and draft pending the action of the government. We are also today forwarding to Mr. J. B. Mayes the abstract which we have to the land with instructions as to what to do with it. Now, Mr. Bridewell, if you want this agreement made, let us hear from you at once."

The loan was not procured from the bank, and in the month of January, 1920, the appellant, Loving, bought the said land from Seal and Bridewell, and on the 31st day of

January, 1920, notified the appellee of such purchase and demanded possession by the 15th day of February, 1920. Upon receipt of this letter Nat Bridewell filed a suit in the chancery court for specific performance of the contract above set out and upon the bill secured an injunction against the appellant and against Bridewell and Seal to restrain them from interfering with his possession of the said premises.

On the hearing it appeared that on the 29th day of November, 1919, the Farm Loan Bank at New Orleans rejected the application for a loan on the report of its inspector, and informed the secretary of the local Farm Loan Association of its rejection, but stated that, if certain improvements were made and more land put in cultivation, they would be disposed to take the matter up again on being so advised. The secretary of this Farm Loan Association, who was endeavoring to secure the loan for Nat Bridewell, endeavored to get the Farm Loan Bank to make the loan and to rescind its decision, but they declined to do so unless the improvements were made and more land put in cultivation.

Nat Bridewell also approached Loving, the appellant, in December and tried to induce appellant to make him a loan upon this property. The appellant did not agree so to do, but stated he was winding up some business affairs, and when he got through that he would investigate the matter.

The attorneys for the appellant corresponded with the Farm Loan Bank with reference to whether the loan had been made, and were informed that it had been rejected and stood rejected on the books of the Farm Loan Bank. He also had some correspondence with Mr. Mayes, the secretary of the Farm Loan Association, and secured similar information as to the status of the said loan.

The appellee testified in the case that he was expecting to secure a loan from the Farm Loan Bank for as much as five hundred dollars, and that he had arranged to pay the balance and contended that he had no notice of the rejection of his loan by the Farm Loan Bank. But in this testi-

mony he is contradicted by his agent, Mr. Mayes. The appellee also testified that he did not have the money at the time of the taking of his evidence with which to pay the amount called for in the contract.

On the hearing the chancellor held that the above instruments constituted an equitable mortgage and applied the fifty dollar Liberty Bond on the payment of the amount, leaving seven hundred fifty dollars which he decreed to be a lien, with interest thereon at six per cent., and decreed that unless the same was paid within one year the land should be sold, and directed if same was paid by Nat Bridewell within that time that the interest of the appellant should be canceled and annulled, and limited all the rights of the appellant to that of an equitable mortgage, from which decree this appeal is prosecuted.

We are unable to agree with the chancellor in his construction of the instruments involved in this suit. The former decree in chancery and the judgment in the circuit court adjudicated the title to the land in the appellant, Bridewell, and Seal undertook in the said contract to warrant the title to the said land in case the payment was made, and it was expressly provided that, if the payment was not made, the contract would be void. Nat Bridewell did not owe Seal or Mrs. Bridewell nor Lee Bridewell any debt, and debt is essential to an equitable mortgage. The title to the land was completely vested out of Nat Bridewell by the decree of the chancery court and the judgment of the circuit court. It is true the decree and judgment was consented to out of consideration of the agreement to sell, but Seal had a trustee's title by a foreclosure proceeding, and this is what was being sold by the contract. The extension of the agreement expressly provided that, if the loan failed and the money was not paid within the time of said extension the Liberty Bond put up as a forfeit should become the property of the appellant as liquidated damages. This contract was an agreement to sell and was not an equitable mortgage.

This case is easily distinguishable from the cases relied upon by the appellee, and especially from *Gannaway* v. *Toler,* 84 So. 129. In that case a check was sent in payment, and retained by the grantor without notice until after the time for performance had elapsed, and there was an ability to pay, and the contract would have been carried out, according to the decision of the court, had the check been refused upon the ground that it was not money.

The judgment will be reversed, the injunction dissolved, and the cause remanded, with direction to the chancellor to dismiss the bill and assess damages for the wrongful suing out of the injunction.

*Reversed and remanded.*